## SEARS v. HATHAWAY et al.

Plaintiffs and one C., partners in the mercantile business, purchased of defendant goods on credit, which were shortly afterwards sold by plaintiff and his partner at a sacrifice, and the proceeds immediately invested in a homestead in the name of C., who was the brother-in-law of plaintiff.   Defendant subsequently caused plaintiffs to be arrested upon the charge of cheating, from which arrest they were discharged. Afterwards, defendant caused plaintiff and C. to be arrested on a charge of concealing property with intent to defraud and delay their creditors ; the charge was dismissed as to plaintiff, and C. was sent up to the Criminal Court to answer. Plaintiff thereupon brought his action against defendant for malicious prosecution; Held, That if plaintiff was entitled to any damage, he could recover only the actual damage which he sustained by the arrest.

Malice cannot be presumed in a prosecution where the defendant has incurred all the moral guilt of the charge, although he may have evaded the penalty of the law.

APPEAL from the Fourth District, County of San Francisco.

The facts appear in the opinion of the Court.

*Pixley & Smith and Daniel Rogers* for Appellant.

*E. Cook* for Respondents.

BALDWIN, J., delivered the opinion of the Court—TERRY, C. J., concurring.

This was a case for malicious prosecution. The evidence on the trial tended to show that the plaintiff and one Crowell were partners in the mercantile business in San Francisco. The defendant sold to the plaintiff goods upon credit shortly before the fourth day of April, 1857, upon which day the firm of J. M. Crowell & Co. were sued, attachment levied, and the concern closed. All the goods sold by defendants, and bought by J. M. Crowell & Co., were shortly after the purchase sold at a sacrifice—some on the day of the purchase, some between the purchase and delivery, and others even previous to the purchase, for less than the prices at which they were purchased, and the proceeds, to the amount of $5,000, invested in the evening of the third of April in the purchase of a homestead by the joint agency of Crowell and Sears; the deed having been taken in the name of John M. Crowell, the brother-in-law of Sears. Hathaway, on the fourth of April, caused the plaintiff to be arrested upon the charge of cheating. Defendant was discharged. Afterwards, Hathaway consulted counsel, and caused Sears and Crowell to be arrested on a charge of concealing property with intent to defraud and delay creditors. This charge was dismissed by the Police Judge as to Sears, and Crowell was sent up to the Court of Sessions.

A trial was had in the District Court for the Fourth District, which resulted in a verdict for plaintiff for $4,000. On motion for a new trial, the Court ordered the motion to be granted unless the plaintiff reduced his verdict to $2,000, which he did; the defendant appealed.

No actual damages were shown beyond the payment of a sum of two

Sears *v.* Hathaway.

hundred dollars for counsel fees in defending against these suits, and some proof of detention on and after his arrest.   There was no proof of express malice, or of any circumstances of peculiar hardship or oppression.   The damages seem to have been given in this extraordinary sum as smart money, and not merely compensatory for the actual injuries sustained.   The evidence, as disclosed by the record, leaves little doubt of the moral guilt of the plaintiff's conduct, and the plaintiff's complaint seems to arise from the technical fact that this fraud was not evidenced by writing; and, therefore, that his procuring goods of other persons, without intention of paying for them, but to so appropriate them as that neither the goods nor the proceeds could be reached by his creditors, was not, in the absence of some writing, a crime for which he could be convicted under the statute.   Conceding all this for the argument, and still the concession leaves the verdict wholly indefensible.   A party who stands before a jury in such a case as this, on pure technical law, for a defense against an act of moral turpitude, and claiming a discharge because his prosecutor has not pursued a statutory mode of proof to convict him of a crime punishable by the statute, may congratulate himself that the precautions of the law have availed him to escape its merited penalty ; but he certainly ought not to have, in addition to this immunity, a right to claim a small fortune from his victim for having mistaken the remedy, or not been as well versed as himself in the technicalities which sometimes shield guilt from public justice.   If he was entitled to receive anything under the circumstances, he was entitled to recover nothing more than the actual damages which he sustained by the arrest.   It is folly to talk of damages for an injured reputation caused by the imputation of a crime, the whole moral guilt of which he had incurred.

It is true that Courts rarely interfere with verdicts in cases of this sort.   They will only do so in extreme cases; but this is of the very class of cases which constitute the exception to the rule of non-interference.   It would be a reproach to public justice if such a verdict could stand.

The judgment is reversed.